<mark style="writing-mode: vertical-rl">MEMO ENDORSED</mark>



ECIJA SBGB
PO Box 363068
San Juan, PR 00936-3068
Tel.: 787-300-3200 Fax: 787-300-3208
www.ecija.com

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/29/2023__
```

September 17, 2023

The Hon. Nelson S. Roman
United States District Judge
Southern District of New York
300 Quarropas St.
White Plains, NY 10601-4150

BY ELECTRONIC MAIL

**Re: Letter Motion requesting early sentencing for Mr. Kareem Ford in Cr. No. 23-477**

Your Honor:

As court-appointed for Mr. Kareem Ford, a 22-year-old with no prior criminal record and a solid history of employment and college studies, I write to respectfully request that this Honorable Court schedule a sentencing hearing as early as possible. The reasons for my request are myriad.

First, some procedural background. Mr. Ford pleaded guilty on Thursday, September 14, to an Information charging him with violating 18 U.S.C. Sec. 875 (c), threatening interstate communications. In the Information, the government charges that, on December 2, 2022, Mr. Ford sent two threatening messages, through Instagram, to a reporter. Mr. Ford's guideline range, as per the government's *Pimentel* letter and the defense's independent assessment, is 0-6 months of imprisonment. Had Mr. Ford exercised his constitutional right to a trial, and been convicted, his guideline range would be exactly the same – 0-6 months of imprisonment.

At the time of the filing of this letter, Mr. Ford has been detained for 45 days – 1-and-half months. When Mr. Ford was originally presented in federal court, in January, he was released on conditions of bail agreed on by both the defense and the government. He was doing great – a steady job at Home Depot and concentrated on potentially returning to college – and undersigned counsel applied for Mr. Ford to be considered as a perfect candidate to benefit from the Young Adult Opportunity Program. Mr. Ford was hopeful that, through the program, he could avoid becoming branded a federal felon – "becoming another statistic", as he says.

Unfortunately, in the beginning of August, Mr. Ford was charged with a criminal case in the Bronx for battery. My expectation is that the Bronx case will soon be dismissed, but that new case, coupled with logistical problems related to his living situation with his aunt in Queens, triggered his bail to be revoked at the federal level on August 3. Since then, Mr. Ford has been detained at the Westchester County jail. He has never been imprisoned before.

1



I relayed these developments to personnel administering the Young Adult Opportunity Program. On September 6, through a letter, the Hon. Sarah Netburn, U.S. Magistrate Judge in charge of the program, communicated that Mr. Ford had not been selected. Nonetheless, Mr. Ford kept his spirits high, and his family support did not waiver. He eventually decided to plead guilty because he knew that he was in fact guilty and because he wanted to get out of jail as soon as possible, move on with his life, and move in with his sister in Chicago to try to reinvent himself by getting a new job and finishing his college studies.

As part of the preparations for the change of plea hearing, undersigned counsel and AUSA Ryan Allison, in charge of this case, exchanged several email communications and telephone calls. On September 6, AUSA Allison wrote an email to Ms. Gina Sicora, Courtroom Deputy to Your Honor, stating that "Defense counsel, who is copied here, has requested that the Court hold an arraignment/plea hearing and a sentencing hearing at its earliest convenience, as the defendant is currently detained, and his guidelines range is 0-6 months. The Government does not object to this request."

On September 11, Ms. Sicora sent an email to undersigned counsel and the government stating that, "since you are requesting an expedited sentencing, does the record establish no need for a presentence investigation report pursuant to Fed. R. Crim. P. 32? I need counsel to confirm this. The earliest availability we have for Sentencing is Sept. 29, 2023 at 11:00 am. Please advise if this date/time works for counsel."

I immediately sent an email to AUSA Allison asking what the government's position would be as to eschewing the PSR and moving for expediting sentencing by way of creating a sufficiently robust record to allow the Honorable Court to appropriately sentence Mr. Ford under Fed. R. Crim. P. 32. AUSA Allison replied that, from an institutional point of view, the U.S. Attorney's Office could not join any defense request to waive the PSR. As an alternative, AUSA Allison proposed in an email, dated September 12, that "we would be willing to consent to a request for a much faster pre-sentence investigation and objection/review deadlines. For instance, we could probably agree to a structure in which the Court orders (1) the government to disclose to probation all relevant information within 24 hours of the plea; (2) a draft PSR to be completed within a week or so of such disclosure; and (3) just a few days for objections by either side. If instead you want to ask the court to waive all Rule 32 procedures, we can't stop you from making that application, but we also can't join it."

Based on this reply by the government, I decided that, instead of litigating the issue, I would instead propose to the Court a course of action mirroring the government's suggestions. Hence, on September 12, I emailed Ms. Sicora stating, in relevant part:

"The government and the defense conferred to address your question
as to how to proceed with expediting sentencing after Thursday´s plea of

2



guilty. Both parties agree that an expedited pre-sentence investigation report should be ordered, and that the government will provide to the Probation all relevant information within 24 hours of the plea (that is, by Friday the 15th).

The defense would also respectfully request, with acquiescence from the government, for the Court to order that Probation disclose the PSR by Friday the 22nd, a week after the government´s disclosure of all relevant information. Both sides would have a couple of days to file any objections to the PSR. And, finally, the parties would be available for sentencing on September 29 at 11 am as you suggested."

I informed Mr. Ford of the proposed deadlines, specifically the sentencing date of September 29. During the change of plea hearing before the Hon. Judith C. McCarthy, the Court also informed Mr. Ford that the sentencing date had been scheduled, in an expedited form, for September 29. (The Docket entry also reflects as much) After the hearing, I went to the U.S. Probation Office to give the officer a heads up of this expedited PSR. The officer informed me that a one-week expedited PSR would not be possible at all, and that, at the very least, 30 days would be needed. Because of this, I wrote again to Ms. Sicora late in the evening of September 14 relaying that, contrary to what I had stated in a prior email, and based on my learning that a one-week expedited PSR was not feasible, I was in fact moving the court for a sentencing with no PSR. I had not requested the waiver of the PSR before, neither to the district nor the magistrate judge, because I thought, as everyone else, that a PSR could in fact be ready prior to the September 29 sentencing date.

Prior to the change of plea hearing, neither the defense nor the government nor the court was aware that the U.S. Probation Office could not prepare and disclose a PSR within the timeframe agreed by the parties. After the September 14 change of plea hearing was held, a series of additional email exchanges took place. In all of them, the government and the defense agreed that, at a minimum, an expedited PSR should be ordered. Nevertheless, late on September 14, Ms. Sicora, through an email, informed the parties that the Honorable Court requested a non-expedited PSR, and that the sentence would be rescheduled from September 29 to December 18. If Mr. Ford is indeed sentenced on December 18, he will have been imprisoned by then for four-and-a-half months, at the upper end of the suggested 0-6 guideline range.

Therefore, the defense respectfully requests that this Honorable Court eschew a PSR, as the government and the defense can place sufficient information on the record to allow Your Honor to adequately and properly sentence Mr. Ford with said information and based on Fed. R. Crim. P. 32 (c)(1)(A)(ii). The government has advanced that, although they cannot join in the defense's request for this course of action, they are prepared to place enough information on the record if the Court grants this request. If the Court is in fact inclined to allow the parties to proceed to sentencing

3



without a PSR, I would respectfully request that the September 29 sentencing date remain unaltered.

In the alternative, if the Court does require a PSR, the defense respectfully requests that it order that it be prepared in an expedited manner, and that the sentencing hearing be scheduled as soon as the expedited PSR is disclosed. The government has also requested that the PSR be prepared in an expedited manner.

There are of course pragmatic reasons for these requests: I am trying for Mr. Ford to spend as little time as possible in confinement, where he has never been before and where he does not belong for a crime like the one he pleaded guilty to. He should not be held in custody because of the fact that, despite his admitted mistakes and bad decisions, he currently does not have anyone that can house him in New York. The decision of what punishment should be meted against Mr. Ford lies solely with Your Honor, of course. But, most respectfully, it is my expectation that, based on Mr. Ford's Section 3553 factors, the nature of this offense, his lack of criminal history, and his record of employment and studies, the Court may be inclined to sentence him to time served.

At the time of the offense, Mr. Kareem Ford was a 21-year-old with no prior state or federal criminal convictions (he does have a disorderly conduct – a violation, not a crime – stemming from a December 2022 arrest); he was gainfully employed at a Home Depot in Queens; he recently resolved an outstanding warrant he had for a violation of driving with a suspended license in Warsaw, N.Y.; and his biggest desire is to put his current legal predicament in federal court behind him so that he can again work and eventually recommit to college.

Mr. Ford is deeply remorseful and repentant of his impulsive actions as charged in the Information against him. He wishes he could communicate with the victim in this case, a journalist, to relay that he is truly sorry for having written to her in a threatening way. He wrote: "If I could speak to the reporter I would apologize and deeply tell her my regrets and tell her I am harmless and was being young and dumb. I meant no harm and had no intentions on any words I said. It was just wrong what I did, and stupid."

Since the incident in December 2022 that led to this case, Mr. Ford and I have had conversations about the importance not only of civic discourse in general but, perhaps more significantly, the value of a free and vigorous press in a democracy. As a former journalist myself, I pressed upon Mr. Ford that his alleged actions could be viewed not solely against an individual but, more broadly, against a basic right in our system of gathering and disseminating information. It is my firm belief that, over the course of the past seven months, Mr. Ford has internalized the gravity of acting impulsively through social media and the internet in general, and that thumbing away recklessly at a keyboard, or a smart phone, can and will have real-world consequences. Nonetheless, Mr. Ford, who committed these alleged acts when he was 21, should not be defined his whole life by this episode. He will forever carry the scarlet letter of a criminal felony, as so many other young African American males unfortunately do.



Mr. Ford has already faced the consequences of his actions. In addition to losing his liberty, his career in the healthcare industry is, sadly, most probably out the window. His work for Hope Home Care, Inc., as described by the director of staffing services, was "outstanding." A letter from Mr. Brent Alexander II states that "several facilities (Mr. Ford) worked with commended his work ethic. Mr. Ford was able to work with very challenging clients and found ways to keep them engaged. I can truly say Mr. Ford is a great candidate to work with the intellectually and developmentally disabled. He possesses all skills and is willing to learn and adapt in any given situation. I can say without a doubt that he is a person with good morals. Mr. Ford operates with integrity, and never has a bad word to say about anyone. Mr. Ford is also hard working and dedicated, and never leaves a job unfinished."

Mr. Ford's work ethic led him to be named temporary AM shift supervisor at one of the facilities. Mr. Alexander's letter goes on to explain that "in this role he was in charge of leading the morning shift and providing oversight to the support staff. Mr. Ford played a key part in the residence and assisted them in their annual state process. It is evident and can be seen that his love for the field and the individuals was clearly shown. At all sites Mr. Ford developed a special bond with the individuals and the staff. Working with the clinicians to assist in the development of plans to ensure the individuals have the best quality of life possible. Mr. Ford expressed interest in going to school to pursue a degree in Nursing. I strongly encouraged him and believe he will make a great nurse."

In fact, Mr. Ford did precisely that – in 2020, he started school, at Medgar Evers College in Brooklyn, with the goal of obtaining a degree to become a licensed practical nurse. He completed one semester and expects to go back once he saves enough money and puts this case behind him. As to his personal and family life, Mr. Ford maintains good relationships with his mother, father, and siblings, and has so far avoided serious romantic commitments and children because he knows the time and financial burdens that come attached. He is still too young for those entanglements and has too many goals on his plate. In five years, however, he does want to start a family. He hopes that, despite his federal felony, he may be able to find employment in the health care industry – where he can help people in need and, at the same time, earn a robust income with solid benefits.

In conclusion, this letter, coupled with the government's submission, provides sufficient information about Mr. Ford to allow this Honorable Court to properly sentence him in a way that is sufficient but not greater punishment than necessary. The defense, therefore, respectfully requests that this Honorable Court eschew a PSR and sentence Mr. Ford, a 22-year-old with no prior criminal convictions charged with a non-violent crime, and who has many positive things going for him, to time served on September 29. In the alternative, Mr. Ford respectfully requests that, if this Honorable Court wishes to sentence Mr. Ford with a PSR, that the PSR be ordered prepared in an expedited fashion so that Mr. Ford can be sentenced as soon as it is disclosed, since he is currently detained and his guideline range is 0-6 months.



Lastly, undersigned counsel thanks Your Honor for reading this lengthy letter and apologizes for any misunderstanding that may have occurred from email communications with court personnel, specifically Ms. Sicora, who has been nothing but accommodating to the parties.

Sincerely yours,

*S/Leonardo M. Aldridge*
Leonardo M. Aldridge
Attorney for Mr. Kareem Ford

**Although Defense counsel has requested to waive the PSR, the Government stated it cannot agree to a waiver.  However, the parties agree to an expedited PSR.  The Probation Office relayed that an expedited PSR can be completed in 45 days.  There is only one disclosure – the FINAL disclosure – and the parties WILL NOT HAVE THE OPPORTUNITY TO SUBMIT CORRECTIONS.  The Sentencing date is scheduled for Nov. 27, 2023 at 12 noon.  Defense's sentencing memo must be submitted to the Court on or before Nov. 17, 2023.  The Government's sentencing memo must be submitted to the Court on or before Nov. 21, 2023.  Two hard courtesy copies of the respective sentencing memo must be provided to chambers and one copy shall be emailed to chambers. Clerk of Court is requested to terminate the motion at ECF No. 29.**
**Dated: September 29, 2023**
**White Plains, NY**

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

6